IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD M. APPEL, RITA APPEL,        :        CIVIL ACTION
    and NANETTE APPEL-BLOOM,        :
    Individually and on             :
    Behalf of all Others            :
    Similarly Situated,             :
                                    :
        v.                          :
                                    :
GERALD S. KAUFMAN, et al.           :        NO. 08-392

MEMORANDUM & ORDER

McLaughlin, J.                                  March 12, 2009

The plaintiffs are currently tenants-in-common with
stakes in a piece of property located at 401 North Broad Street,
Philadelphia.  In 1959, the property was purchased by a group of
promoters, referred to as "Nominees," who leased the land and the
building located on the land to the Terminal Commerce Building of
Philadelphia, Inc. (the "tenant") for a term of 99 years.

The defendant Gerald Kaufman ("Kaufman") is acting as a
"Nominee" for the tenants-in-common and administers the business
of the property as it relates to the lease of the land and the
building on the land.  The role of "Nominee" is defined in the
original contract (the "Agreement") between the group of
promoters and the tenants-in-common to whom the promoters sold
shares.  The plaintiffs allege that Kaufman is not the legitimate
Nominee for the property, that he has illegally paid fees to
himself from the proceeds of the tenants-in-common's rent, that
he has placed mortgages on the property for unknown reasons and

without authorization, that he has made unauthorized loans to the property's tenant, that he has paid taxes required to be paid by the tenant, that he has maintained financial interests in the property in conflict with the tenants-in-common, and that he has generally mismanaged funds belonging to the tenants-in-common. Am. Compl., ¶ 31.

The plaintiffs allege that Kaufman has fraudulently conveyed title to the property to the defendant Gerald S. Kaufman Corporation (the "Corporation") and that the company is now a purported "Nominee." Am. Compl., ¶ 32. The complaint alleges that Kaufman and his wife Carol F. Kaufman are the only officers, directors and shareholders of the Corporation. Am. Compl., ¶ 33. The plaintiffs further allege that the defendant Aires Capital, Inc. ("Aires") is the mortgagee of a mortgage created by Gerald and Carol Kaufman on behalf of the Corporation in which the property at 401 Broad Street acts as collateral for a debt of $6.7 million. The plaintiffs allege that this money has been put to the personal use of Gerald and Carol Kaufman through their company Gerald S. Kaufman Corporation. The plaintiffs allege that Kaufman has been paying the principal and interest on this mortgage out of rents received from the tenant on the property. The defendant Aires assigned the allegedly fraudulent mortgage to the defendant Norwest Bank Minnesota ("Norwest").

The amended complaint contains four counts. The first

2

count claims fraud and breach of fiduciary duty by Gerald Kaufman, Carol Kaufman and the Gerald S. Kaufman Corporation. Am. Compl. at 11.   The plaintiffs claim that these defendants defrauded the plaintiffs from funds to which they were entitled by placing the mortgage on the property without authority from the tenants-in-common and paying the principle and interest on that mortgage using rents belonging to the tenants-in-common. Count two is for an accounting and for the appointment of a receiver to compel Kaufman, his wife and his corporation to account for their financial activities with respect to the property.   Count three requests a declaratory judgment invalidating the deeds granting Kaufman and the Corporation title to the property as a Nominee, as well as the Aries mortgage and the assignment of that mortgage to Norwest.   Finally, count four requests a partition of the property, in which the property will be sold and the proceeds of that sale will be paid out to the tenants-in-common.

The defendants have filed two separate motions to dismiss.   The first was filed by Kaufman and addresses each claim in the amended complaint.   Although the motion was filed under the name of Gerald Kaufman as an individual, it pertains to the claims in their entirety as they are alleged against Kaufman, Carol Kaufman and the Gerald S. Kaufman Corporation.   The second motion was filed by Norwest and pertains only to Count III, which

3

requests a declaratory judgment nullifying the Norwest mortgage.

The Court finds that the amended complaint adequately alleges each of the four counts.  The Court recognizes that discovery may uncover evidence that demonstrates that the plaintiffs are time-barred from asserting certain of their claims or demonstrates a lack of standing to recover certain portions of the damages claimed.  The Court also recognizes that the plaintiffs' claim for partition, which incorporates their allegations of fraud and wrongdoing, may ultimately be foreclosed by the terms of the Agreement if there is no evidence demonstrating that the defendants have subverted the purpose of that contract.  In light of these two possibilities, the Court will deny the motions to dismiss without prejudice to the defendants' ability to raise their arguments after the close of fact discovery.

## I.   Kaufman's Motion to Dismiss

Kaufman argues three bases on which to dismiss the complaint.  First, he argues that the plaintiffs are contractually barred under the terms of the Agreement from seeking partition of the property.  Second, he states that the plaintiffs are barred by the applicable statutes of limitations from seeking relief for actions taken prior to December 1, 2005, with respect to breach of fiduciary duty, fraud and the

4

nullification of deeds and mortgages, or prior to December 1, 2001, with respect to the claim for an accounting. Third, Kaufman argues that the named plaintiffs do not have standing to assert claims arising before they acquired their tenancies-in-common.

A.   Kaufman's Challenge to the Plaintiffs' Partition Claim

Kaufman argues that Paragraph 3 of the Agreement under which the original Nominees sold shares to the original 600 tenants-in-common (and to which the current tenants-in-common remain bound), precludes partition of the property absent the consent of all the tenants-in-common. Paragraph 3 states:

> The parties hereto (the Nominees and Tenants-In-Common) expressly covenant and agree that none of them shall at any time bring or prosecute any action, suit or proceeding for the partition of said real property or for a judicial sale thereof without the prior written consent of all of the parties to this agreement.

Am. Compl., Ex. A, ¶ 3.

The plaintiffs first argue that Kaufman does not have standing to enforce the agreement because he is not a party to it. Second, they state that the clause is unenforceable as a matter of law because it is an unreasonable restraint on alienation. Opp'n at 4.

The plaintiffs have argued that Kaufman does not have standing to assert a defense on the basis of the Agreement because he is not a party to that Agreement. Kaufman is the son

of Benjamin Kaufman, an original Nominee.  When a Nominee dies, his status as Nominee passes by right of survivorship under the terms of the Agreement.  Am. Compl., Ex. A, ¶ 1.  The Amended Complaint says that Kaufman unlawfully took control of the property as the "sole" Nominee, but does not state that he is not one of the valid Nominees.  Kaufman claims that he is both a Nominee and a tenant-in-common.  The Amended Complaint states that, because Kaufman took it upon himself to be the sole Nominee, "there were imposed upon him by law . . . the fiduciary obligations owed by the Nominees to the tenants in common under the agreement of September 1, 1959."  Am. Compl., ¶ 24.  Given the dispute over Kaufman's status and the plaintiffs' assertions that Kaufman is bound by the terms of the Agreement, the Court is not able at this point to find that Kaufman lacks standing to enforce the provisions of the Agreement.

The plaintiffs also argue that in Pennsylvania "the right to partition is an incident of a tenancy in common and [is] an absolute right."  Opp'n at 4 (quoting Bernstein v. Sherman, 902 A.2d 1276, 1278 (Pa. Super. Ct. 2006)).  They argue that the Agreement's bar on partition is unenforceable because it unreasonably restricts their rights of alienation.  They note that the contract requires the unanimous consent of over 600 individuals in order to partition the property.  The plaintiffs also claim that the contract attempts to impose an unreasonable

6

temporal restraint on partition by stating in paragraph 7 that
"this agreement and the interests of the parties hereto as
tenants-in-common shall continue in full force and effect until
the said property shall be sold. . . ."  Paragraph 9 of the
Agreement states that the premises owned by the parties as
tenants-in-common may "be sold in its entirety on behalf of the
Tenants-In-Common on approval of the terms of the sale by all the
parties hereto [i.e., all of the tenants-in-common and the
Nominees]."  The plaintiffs argue that these conditions make
partition or sale of the premises according to the Agreement a
practical impossibility and thereby unreasonably restrain their
right to alienate their interests in the property.

     The plaintiffs cite Hyatt v. Hyatt, 417 A.2d 726 (Pa.
Super. Ct. 1980), for support of their position.  Opp'n at 5.
Hyatt held that a restraint on partition without a discernable
time limit on the restraint was unreasonable, constituting an
unlawful restraint on alienation.  "The indefinite postponement
of the right to partition is contrary to the policy of the
Commonwealth . . . .  Because this agreement is contrary to the
said policy, we hold that it is invalid."  Id. at 729.

     Kaufman argues that "Pennsylvania courts have applied
reasonable restrictions on partition in circumstances such as
those of the present case, based on the principle that partition
cannot be had until the purpose for which the property was

acquired . . . has been fulfilled." Rep. at 6.  Kaufman asserts
that the Agreement has the purpose of  the completion of a 99
year lease of the property to the tenant, Terminal Commerce
Building, Inc.  The Agreement references this lease on pages 1
through 3, and states on page 4 that "[t]he Nominees agreed to
sell, assign, set over, transfer and deliver said contract [the
lease] for the benefit of all of the Tenants-In-Common . . . for
the sum of $4,550,000 . . . ."  Am. Compl., Ex. A at 4.[1]

        The Court finds that the 99 year lease states a valid
purpose for the Agreement, in the interest of which partition
rights may be frozen.  The defendants cite Marchand v. Marsh, 280
Pa. 292, 294 (1924), which upheld a restraint on partition rights
where three people had purchased land "according to a plan and
agreement [of the parties] as a place for the maintenance . . .
[of] a college for teaching the science and practice of
chiropractic."  Id. at 294.  The agreement in Marchand stated
that the parties would maintain their agreement "until [the
college] shall get upon a self-sustaining or profitable basis."

--------

[1] Kaufman also identifies a second purpose of the Agreement,
namely the sale of the building, which requires the unanimous
consent of the tenants-in-common.  The Court will ignore this
second asserted purpose because it is coextensive with the
restriction on partition.  The same precondition for partition,
which would inevitably result in the sale of the property, is
placed on the sale of the property without a call for partition:
unanimous consent of the tenants-in-common.  Therefore, if the
restraint on partition is unreasonable, then this second
"purpose" would be equally unreasonable under Pennsylvania law.

Id. at 295.  The Pennsylvania Supreme Court found that "[t]here is no pretense that the college has reached this happy state, nor that it has been abandoned as an institution for 'teaching the science and practice of chiropractic'; though, under the facts now appearing, one or the other of these times must arrive before the property can be divided without the consent of all three of the parties."  Id.  The restraint on partition was therefore upheld.

Appeal of Latshaw, another case from the Pennsylvania Supreme Court, similarly supports the defendants' position.  As in Marchand, Latshaw upheld a restriction on partition of land used by a partnership.  15 A. 676, 677 (1888).  "The land is bought for a special use, and as long as the necessity for that use continues it cannot be destroyed by the act of either tenant without the consent of this co-tenant."  Id.  at 677.

More recently, in Fuhrmann v. Doll, 451 A.2d 530 (Pa. Super. Ct. 1982), the Superior Court found that property bought by "trustees" for a business association was not subject to partition upon the request of one of the trustees.  The agreement at issue in Furhmann did not have an express provision restraining the right to partition, but the court implied such a restraint: "An agreement limiting the right to partition need not be express; it may be implied from the circumstances in which the property was acquired or is held."  Id. at 532.

9

The 99-year lease, being incorporated into the Agreement, is a clear purpose of the parties contract.  The parties to the Agreement created a valid and reasonable restraint on the right of partition.  However, the Court will not dismiss the plaintiffs' claim for partition at this time.  The plaintiffs have alleged wrongdoing by a party to the Agreement and have previously expressed suspicions that the original Nominees may have had some improper interest in the finances of the property's tenant at the time of the original contract.  Am. Compl., Ex. F.  If the plaintiffs are able to successfully pursue their claims for breach of fiduciary duty and fraud, the facts may prove that the purpose of the Agreement has been subverted by the defendants.  In that event, Kaufman's defense based on the purpose of the contract would be unavailing.  Kaufman may reassert his claim for protection under the terms of the Agreement at the close of fact discovery.

B.   Kaufman's Challenges to Plaintiffs' Standing

Kaufman argues that the plaintiffs may not assert any claims that accrued before they became tenants.  He states that because the complaint does not allege that the plaintiffs represent the estates of the original tenants-in-common (from whom the plaintiffs inherited their shares), they have not alleged standing to maintain such claims.  Therefore, any claims

10

accruing before 1986 must be dismissed as to the plaintiff Ronald
Appel; before 1995 as to Nanette Appel-Bloom; and before July 10,
2006 as to Rita Appel.

Pennsylvania courts give standing only to the injured
party: "A civil action sounding in tort is commenced and
maintained by the injured person." Werner v. Plater-Zyberk, 799
A.2d 776, 784 (Pa. Super. Ct. 2002). "A litigant cannot rely on
a sanction motion to seek compensation for every injury that the
sanctionable conduct produces. Rather, an injured party must
request tort damages to protect his personal interest in being
free from unreasonable interference with his person and property.
Id. (emphasis added) (citing Business Guides, Inc. v. Chromatic
Communications Enterprises, Inc., 498 U.S. 533, 553-54 (1991); In
re Spectee Group, Inc., 185 B.R. 146, 162-63 (S.D.N.Y. 1995)).

The plaintiffs assert that they "plainly have
standing," but fail to rebut the defendants' observation that
claims accruing before property is granted to a successor
continue to belong to the grantor or to his estate. Opp'n at 9.
The plaintiffs do not offer any authority of their own to
demonstrate that a successor to a property interest may sue on
behalf of their predecessor, or that such a claim does not belong
solely to the predecessor's estate. The plaintiffs argue that
"rights of action, of such a character that they do not cease
with the death of the owner, may be disposed of by will," Opp'n

11

at 8, but they do not allege that any such rights actually were disposed of by will, let alone that such rights were willed to them.

Although the complaint discusses events occurring before the plaintiffs became tenants-in-common of the property, specifically the designation in 1983 of Kaufman as a Nominee, the Court nevertheless finds that each of the plaintiffs has standing to maintain their claims because they allege ongoing fraudulent behavior, including the ongoing mortgage arrangement with Aires and Norwest. The plaintiffs appear to base their calculation of damages on the amount for which Kaufman mortgaged the property to Aires. Therefore, it may be that Rita Appel, who did not become a tenant-in-common until 2006, and class members in her position will only have standing to recover on a portion of those damages, but that does not defeat standing to assert the claims. The Court will again deny the motion to dismiss on the grounds of lack of standing, but will allow the defendants to reassert those claims, as they prove relevant, at the close of fact discovery.

C.   Kaufman's Assertion of Statutes of Limitations

Kaufman's final argument is that the plaintiffs' claims are barred in part by the statute of limitations for each cause of action. This case was filed in state court on November 27, 2007, according to the notice of removal. The limitations period

12

for the plaintiffs' claims for breach of fiduciary duty and fraud
is two years.  42 Pa. C.S. § 5524(7).  The limitations period for
a demand for an accounting is six years.  42 Pa. C.S. § 5527; see
also, Girsh v. Girsh, 218 F. Supp. 888 (E.D. Pa. 1963); Bednar v.
Marino, 646 A.2d 573, 577 (Pa. Super. Ct. 1994).  The claim for a
declaratory judgment that certain mortgages and deeds are void is
subject to a two year statute of limitations because it is based
on the same fraudulent behavior alleged in Count I.[2]

        The plaintiffs argue first that a defense based on an
applicable statute of limitations is an affirmative defense on
which a motion to dismiss may not be based unless "it is clear
from the face of the pleadings that a statute of limitations has
expired."  Opp'n at 12 (citing Saylor v. Ridge, 989 F. Supp. 680
(E.D. Pa. 1998)).  Second, the plaintiffs argue that they have
alleged that they were unaware of any allegedly fraudulent
activity until 2006.  Opp'n at 13.  Finally, the plaintiffs argue
that their amended complaint alleges ongoing wrongdoing by the
defendants running into the present, which cannot be barred by
any limitations period.  Opp'n at 13.

---

        [2]The plaintiffs acknowledge that their third claim is a
breach of fiduciary duty claim and do not challenge the
defendants' asserted time-limitations in their opposition to
Kaufman's motion to dismiss.  Opp'n at 14.  In their opposition
to Norwest's motion to dismiss, the plaintiffs argue that their
declaratory judgment claim is not subject to any statute of
limitations, a position that the Court rejects for the reasons
discussed below.

The plaintiffs argue that they did not discover the defendants' allegedly fraudulent behavior until late 2006.  Opp'n at 13.  The amended complaint states that the plaintiffs were without knowledge of Kaufman's assumption of the role of Nominee in 1983; without knowledge of his transfer of title of the property to the Gerald S. Kaufman Corporation in 1999; without knowledge of the mortgages executed in 1999; and without knowledge that Kaufman "has . . . been paying the interest and principal on said note and mortgage, out of the rents received by him from the tenant of the property."  Am Compl., ¶¶ 24-39.  The plaintiffs state that they became aware of this allegedly illegal activity in 2006 as a result of correspondence between Ronald Appel and Gerald Kaufman.  Am. Compl., ¶ 30.

The defendants argue that the plaintiffs knew or should have known of the recording of the deed conveying title of the property to Kaufman when the deed was fully recorded in 1992, fifteen years prior to the filing of this lawsuit.  The allegedly invalid mortgages granted to Aires and Norwest occurred in 1999, and the Court presumes that the defendants believe that any claim as to those events would have accrued at that time, although they do not explicitly make that argument.  Finally, the defendants include several letters, dating from 2000, written by the plaintiffs' counsel to Gerald Kaufman purportedly regarding the

14

illegal activity underlying this lawsuit.  McNamara Decl., Ex. 2.
These letters were sent "on behalf of . . . Nanette Bloom, and
Ronald Appel and Lee Appel" and demanded the repayment of "all
management fees at any time directly or indirectly paid to you
[Kaufman], and that you distribute same to all of the tenants in
common in accordance with their respective proportional
interests."  Id., Ex. 2, Letter of Jan. 18, 2001.

      Based on these letters, it appears that at least some
portions of the claims may ultimately be barred by the statutes
of limitations because Ronald Appel and Nanette Appel-Bloom had
notice of the underlying problems more than seven years before
they filed suit.  However, because Rita Appel's claims could not
have been made prior to her acquisition of a share in the
property, in July of 2006, her claims dating from that time will
go forward regardless of the survival of the entirety of Ronald
Appel's or Nanette Appel-Bloom's claims.  Moreover, even assuming
that they were aware of Kaufman's wrongdoings in 2000, those
portions of Ronald Appel's and Nanette Appel-Bloom's claims for
breach of fiduciary duty and fraud that relate to wrongdoing and
injury arising after December of 2001 (Count II) and December of
2005 (Counts I and III) will survive a challenge based on the
applicable statutes of limitations.

      Finally, the letters that the defendants include as
exhibits to their briefing do not discuss the 1999 mortgaging of

the property, leaving open the question of the date of discovery
as to that basis for declaratory relief in Count III.  Given the
factual nature of the issue, the facial adequacy of the complaint
and the fact that Kaufman does not challenge the entirety of the
complaint on the basis of the statutes of limitations, the Court
will deny the defendants' motion to dismiss with leave to
reassert their claims upon the close of fact discovery.


II.   Norwest's Motion to Dismiss

        Norwest was added as a defendant on November 17, 2008,
when the plaintiffs' amended complaint was filed.  Norwest now
moves to dismiss Count III, which requests a declaratory judgment
rendering void the mortgage that Norwest holds and "directing
[the defendants] to reconvey title to the Property to the class
members, as tenants in common, in proportion to their respective
interests."  Am. Compl., ¶ 64(f).  The sole basis for Norwest's
motion to dismiss is the time-bar on declaratory judgment
actions.

        Norwest asserts that there is a two year statute of
limitations on the declaratory judgment claim.  In their
opposition to this motion, the plaintiffs contend that there is
no time limitation on their request for declaratory judgment.
They argue that if the mortgage granted to Norwest is void, it
"will always be void, despite the passage of time."  Opp'n at 7.

16

(citing <u>Kean v. Forman</u>, 752 A.2d 906, 908 (Pa. Super. Ct. 2000)
(holding that an action to quiet title brought against a
mortgagee was an action to remove a cloud on title, to which no
statute of limitations applied)).

The plaintiffs argue that the statutory provision cited
by both Norwest and Kaufman as the basis for a two-year
limitations period does not apply to a request for declaratory
judgment.  The plaintiffs argue that the provision "only applies
to actions 'to recover damages.'"  Opp'n at 7.  The full text of
the relevant provision of the statute, however, provides a two
year limitation on:

> Any other action or proceeding to recover damages
> for injury to person or property which is founded on
> negligent, intentional, or otherwise tortious conduct
> <u>or any other action or proceeding sounding in trespass,
> including deceit or fraud</u>, except an action or
> proceeding subject to another limitation specified in
> this subchapter.

42 Pa. C.S. § 5524(7) (emphasis added).

The Third Circuit has stated that "when plaintiffs'
claims are barred by a statute of limitations applicable to a
concurrent legal remedy, then a court will withhold declaratory
judgment relief in an independent suit essentially predicated
upon the same cause of action."  <u>Algrant v. Evergreen Valley
Nurseries Ltd. Partnership</u>, 126 F.3d 178, 184-85 (3d Cir. 1997)
(holding that declaratory relief based on common law fraud was
barred to the same extent as legal relief for such fraud and

17

applying 42 Pa. C.S. § 5524(7) to claim brought by holders of securities).

Norwest argues, on the assumption of a two year statute of limitations on this action, that because the plaintiffs filed their amended complaint on November 14, 2008, "any claims against Norwest arising from alleged fraud occurring before November 14, 2006, are barred." Norwest Mot. at 3. This calculation does not take into account the date on which the plaintiffs became aware, or should have become aware, of Norwest's role in this case. This awareness may date from well within the two year limitations period, assuming two years is the applicable period.

The plaintiffs' original complaint stated that they believed that Kaufman had taken out an illegal loan, but were not aware of the identity of the lender. As it turned out, the loan was the Aires mortgage, later assigned to Norwest. The original complaint was filed in state court on November 27, 2007. Therefore, assuming that the plaintiffs did not yet have a reason to know that Norwest was a potential defendant at the time of the original complaint, the limitations period may not have started running until November 27, 2007.

Even assuming that the two year statute of limitations would apply to this claim under the ruling of Algrant and the language of 42 Pa. C.S. § 5524(7), the Court will not dismiss the claim as time barred at this point. The defendant's assertion

18

that the plaintiffs knew of Norwest's role in the allegedly fraudulent scheme prior to November of 2006 is currently unsupported and specifically contradicted by the amended complaint.  As with Kaufman's statute of limitations defense, the Court will deny Norwest's motion with leave to reassert the argument after the close of fact discovery.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD M. APPEL, RITA APPEL,    :        CIVIL ACTION
    and NANETTE APPEL-BLOOM,    :
    Individually and on         :
    Behalf of all Others        :
    Similarly Situated,         :
                                :
        v.                      :
                                :
GERALD S. KAUFMAN, et al.       :        NO. 08-392

ORDER

AND NOW, this 12th day of March, 2009, upon consideration of the defendant Gerald S. Kaufman's amended motion to dismiss the amended complaint (Docket No. 38), the plaintiffs' opposition, the defendant's reply thereto, and upon consideration of the defendant Norwest Bank Minnesota's motion to dismiss count III of the amended complaint (Docket No. 44) and the plaintiffs' opposition, IT IS HEREBY ORDERED that the defendants' motions are denied without prejudice to reassert their arguments at the close of fact discovery.

BY THE COURT:

MARY A. McLAUGHLIN, J.